### GADD v. DAWSON et al.

### SAME v. WINDERS & DAWSON.

(Circuit Court of Appeals, Eighth Circuit. June 25, 1923.)

Nos. 237, 6280.

1. **Bankruptcy ⬅439—Allowance of claim as secured claim properly reviewable by petition to revise; "proceeding in bankruptcy."**
   The District Court's action in holding that landlord's claim for rent should be allowed against bankrupt estate as secured claim is properly reviewable by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608); the controversy being a proceeding in bankruptcy.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bankruptcy Proceedings.]

2. **Bankruptcy ⬅446—Only legal questions considered on petition to revise.**
   Legal questions only can be considered by appellate court upon a petition to revise.

3. **Landlord and tenant ⬅262(½)—Action to enforce lien must be brought within six months.**
   Under Comp. Code Iowa, 1919, §§ 6502 and 6503, giving landlord a lien for rent continuing for not more than six months after expiration of the term, action to enforce the lien must be brought within that time.

---

4. **Landlord and tenant** ⊚⟹262(½)—**Filing of claim in bankruptcy held sufficient to preserve lien.**

Under Comp. Code Iowa 1919, §§ 6502 and 6503, giving landlord a lien for rent continuing for six months after expiration of term, filing of claim in bankruptcy within six months was sufficient commencement of proceeding to preserve the lien.

5. **Bankruptcy** ⊚⟹151—**Title passes to trustee for purpose of equal distribution.**

Under Bankruptcy Act, § 70a (Comp. St. § 9654), vesting trustee with title to property which bankrupt could have transferred or which might have been levied upon and sold, title passes to trustee for purpose of equal distribution of the proceeds among creditors of the bankrupt.

6. **Bankruptcy** ⊚⟹155—**Trustee's title subject to rights and equities of third persons.**

Title passing to trustee in bankruptcy under Bankruptcy Act, § 70a (Comp. St. § 9654), is subject to rights and equities existing in favor of third persons against the bankrupt.

7. **Bankruptcy** ⊚⟹143(1)—**Title and right to possession of incumbered property held to pass to trustee.**

As matter of law, title and right to possession of trucks for which bankrupt had issued warehouse receipts as collateral security for an indebtedness passed to trustee at date of adjudication in bankruptcy.

8. **Bankruptcy** ⊚⟹188(1)—**Trustee held to have possession of property subject to landlord's lien so as to authorize enforcement of lien.**

Where bankrupt, as security for indebtedness, had issued warehouse receipts for trucks stored in leased garage, and, after cancellation of the lease, leaving the trucks in the building, the holder of the receipts took possession and sold them, and trustee in bankruptcy asserted claim against such holder which was settled by allowing credit on the indebtedness for more than the selling price, trustee *held* to have had constructive possession of trucks subject to the lien.

9. **Bankruptcy** ⊚⟹188(1)—**Lessor held not to have waived lien for rent.**

Where bankrupt to secure indebtedness issued warehouse receipts for trucks stored in leased garage and thereafter made assignment for creditors and assignee arranged for cancellation of the lease leaving the trucks in the leased building, lessor *held* not to have waived lien by releasing of the premises.

10. **Bankruptcy** ⊚⟹188(1)—**Landlord held to have equitable right to allowance of claim as secured claim.**

Where bankrupt, to secure indebtedness, had issued warehouse receipts for trucks stored in leased building and thereafter made assignment for creditors, and assignee obtained cancellation of the lease without removing the trucks, which holder of the receipts afterwards took and sold, and trustee in bankruptcy asserted claim against the holder which was settled by allowance of credit for more than the selling price, landlord's claim for rent *held* entitled, as matter of equity, to allowance as secured claim in view of Bankruptcy Act, § 24b (Comp. St. § 9608).

Petition to Revise Order of and Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Proceedings on the claim of F. B. Dawson and another, copartners as Winders & Dawson, against the Hanson & Tyler Auto Company, bankrupt, opposed by C. W. Gadd, trustee in bankruptcy. An order of the referee, disallowing the claim, was reversed by the District Judge, and the trustee appeals and brings a petition to revise. Appeal dismissed and petition denied.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

See, also, In re Hanson & Tyler Auto Co., 283 Fed. 848, 850; 286 Fed. 161.

Clarence M. Hanson, of Ft. Dodge, Iowa (M. F. Healy, Seth Thomas, and Thomas M. Healy, all of Ft. Dodge, Iowa, on the brief), for petitioner and appellant.

Earl Smith, of Mason City, Iowa (A. J. Feeney, Jr., of Mason City, Iowa, on the brief), for respondents and appellees.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. [1, 2] This matter is before us on appeal and also on petition to revise under section 24b of the Bankruptcy Act. (Comp. St. § 9608). The petition to revise is clearly the proper method of presenting the legal questions involved, the controversy being "a proceeding in bankruptcy." In re Lee, 182 Fed. 579, 105 C. C. A. 117; In re Carley, 117 Fed. 130, 55 C. C. A. 146; Kinkead v. J. Bacon & Sons, 230 Fed. 362, 144 C. C. A. 504; Collier on Bankruptcy (11th Ed.) 575. That legal questions only can be considered by the appellate court upon a petition to revise is well settled by the authorities. Duryea Power Co., Bankrupt, v. Sternbergh, 218 U. S. 299, 31 Sup. Ct. 25, 54 L. Ed. 1047; Lesaius v. Goodman, 165 Fed. 889, 91 C. C. A. 567; In re Holden, 203 Fed. 229, 121 C. C. A. 435; Hall v. Reynolds, 224 Fed. 103, 139 C. C. A. 659; Olmstead-Stevenson Co. v. Miller, 231 Fed. 69, 145 C. C. A. 257.

The facts were stipulated by the parties, and there is no dispute with reference thereto. Briefly stated they are as follows: Winders & Dawson, a copartnership, hereinafter referred to as respondents, leased on August 14, 1920, to Hanson & Tyler Auto Company, a copartnership, hereinafter referred to as the Auto Company, a certain building located at Mason City, Iowa, of which they were the owners; the same to be used as a garage. The lease was for a period of three years at a rental of $400 per month, and possession of the building was taken by the Auto Company on September 1, 1920. In October the Auto Company placed 16 Napoleon trucks in the leased building, and during the same month, under the statutes of Iowa, lessees, as warehousemen, executed and delivered to a concern known as Schanke & Co. warehouse receipts upon said trucks to secure an indebtedness of some $19,000. December 4, 1920, the Auto Company made an assignment for the benefit of its creditors, to C. W. Gadd, the same party who afterwards was named and acted as trustee in the bankruptcy proceeding of the Auto Company. The said assignee in January, 1921, took up with lessors through their attorneys the question of canceling the lease, and on February 1, 1921, the lease between the Auto Company and respondents was canceled. The building was then leased to Craven & Dewing of Mason City, the trucks remaining therein. March 17, 1921, the Auto Company, William A. Hanson, and Roy C. Tyler were adjudged bankrupts, and on April 2, 1921, at the first meeting of creditors, C. W. Gadd was named as trustee in bankruptcy, and he duly qualified for such position. Respondents on April 2, 1921, filed their

proof of debt in the bankruptcy court, claiming a lien by virtue of the Iowa statutes on the property kept on the premises as security for their rent. May 5, 1921, Schanke & Co., holders of the warehouse receipts, took the trucks from said building and sold them for the sum of $21,-000; the same being done without the knowledge or consent of respondents. In August, 1921, the creditors of the bankrupt estate instructed the trustee to proceed against Schanke & Co., or effect a settlement. The trustee did effect a settlement with Schanke & Co., as evidenced by a written stipulation, which was approved by the referee in bankruptcy, John M. Schaupp, Jr. Under the terms of the settlement, said Schanke & Co., in consideration of the turning over by C. W. Gadd, trustee, of all the securities in controversy to them and releasing any claim or right thereto, allowed on its claim against the bankrupts, as a credit or payment, the sum of $45,000. The referee refused to allow respondents' claim for rent in the sum of $1,762.50 as a secured or preferred claim, and certified for review the question involved, to Hon. George C. Scott, Judge of the United States District Court for the Northern District of Iowa; the question, so certified, being whether or not, under the facts stated in the order to be reviewed, claimants (respondents here) were entitled to enforce their statutory landlord's lien against Gadd as trustee in bankruptcy. The District Court held that the referee erred in not allowing the claim for rent of $1,762.50 as a secured claim.

Under the undisputed facts did the court err as to the legal conclusion to be drawn therefrom?

The issues are narrowed to a rather restricted sphere. The trustee claims: (1) That respondents waived their lien on February 1, 1921, when they took possession of the leased premises and relet them with the trucks upon the premises, and especially in view of the fact that Schanke & Co. paid the storage on the trucks from February 1, 1921, until they sold them in May, 1921. (2) That while there was a lien for rent it was an inchoate lien under the Iowa statute, and that no action was taken to enforce it before the expiration of six months, the limitation of the lien provided by the statute. (3) That under the statute the lien of respondents terminated on August 1, 1921, and that the action of the trustee thereafter, under the direction of the creditors, could not reinstate the lien. While other questions are argued, the solution of these is decisive of the case, and it will be unnecessary to discuss the others.

[3] Under the Iowa statutes a landlord has a lien for his rent upon the personal property of the tenant used or kept on the premises during the term, and not exempt from execution, for the period of one year after a year's rent or the rent of a shorter period falls due. Such lien, however, does not continue more than six months after the expiration of the term. Iowa Compiled Code 1919, §§ 6502, 6503; Doane v. Garretson, 24 Iowa, 351; Gilbert, Hedge & Co. v. Greenbaum et al., 56 Iowa, 211, 9 N. W. 182; Holden v. Cox, 60 Iowa, 449, 15 N. W. 269.

The action to enforce such lien must be brought within six months after the expiration of the term of the lease. Nickelson v. Negley et

al., 71 Iowa, 546, 32 N. W. 487; Manhattan Trust Co. v. Sioux City & N. Ry. Co. (C. C.) 68 Fed. 72.

[4] The lease terminated here on the 1st day of February, 1921. The lien as to property owned by the tenant and used or kept upon the place terminated therefore August 1, 1921. It was necessary that action be commenced to enforce the lien before the 1st day of August. Was this done? Respondents on April 2, 1921, filed their claim in the bankruptcy court and asserted their landlord's lien. In Lacey et al. v. Newcomb, 95 Iowa, 287, 63 N. W. 704, it was held that where a claim was deposited with an assignee for creditors under sections 2017 and 2018, corresponding to sections 6502 and 6503 of the later Code, it amounted to the commencement of an action for all purposes touching the running of the statute of limitations. Under the principle of law as thus laid down, the filing of the claim by respondents in this case claiming their lien would be sufficient commencement of the action before the expiration of such lien. What more could the respondents do? They could not seize any of the assets, and the trucks were assets unless they had been abandoned in the method provided by law as burdensome to the estate, which it was conceded was not done. We are satisfied that the filing of the claim in the bankruptcy court, and the assertion of the lien, prior to the expiration of the six months, was a sufficient commencement of proceedings to enforce the lien within the statutory period.

The trustee earnestly contends, and the referee found, that the trustee never took over the trucks; never had them in his possession, and that there is no showing that the money in the hands of the trustee was derived from property subject to the landlord's lien. The trial court held that the trustee was in constructive possession of the trucks; that at all times it was his duty to be in possession thereof; and that he at no time disclaimed such duty or abandoned the same as burdensome property.

[5-8] Under section 70a of the Bankruptcy Act (Comp. St. § 9654), the trustee of the estate of the bankrupt, upon his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt (except as to exempt property) to property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. This title passes to the trustee for the purpose of equally distributing the proceeds thereof among the creditors of such bankrupt. Such title is, of course, subject to rights and equities existing in favor of third persons against the bankrupt. 5 Cyc. 341; In re Swift (D. C.) 108 Fed. 212; In re Hanna (D. C.) 105 Fed. 587; In re Mullen (D. C.) 101 Fed. 413; 3 Ruling Case Law, § 53; Brown et al. v. Frenken, 87 Ark. 160, 112 S. W. 207. Hence title and right to possession of these trucks as a matter of law passed to the trustee at the date of the adjudication of bankruptcy, namely, March 17, 1921.

Further, it is apparent from the stipulation of settlement made between the trustee and Schanke & Co. that the trustee was not conceding the alleged rights of Schanke & Co., for this language is used:

"And whereas the trustee and certain creditors of the said bankrupt have questioned the legality of the transfer of said securities to the said Schanke & Co.:

"Now, therefore, in consideration of the covenants herein contained, and the release by C. W. Gadd, trustee of the said bankrupts, of any claim or right to the securities above referred to, and the turning over by the said C. W. Gadd, trustee, of all of said securities to said Schanke & Co., the said Schanke & Co. hereby agrees to allow on its said claim against the bankrupts the sum of forty-five thousand dollars ($45,000.00) which sum is agreed upon between the said Schanke & Co. and the said C. W. Gadd, trustee, for the purpose of this settlement, as the valuation of said securities. This allowance constitutes payment on the said claim of the said Schanke & Co., of the sum of forty-five thousand dollars ($45,000.00)."

If the trustee at the time of said settlement was not claiming any right in the trucks, or was insisting that the liens against them were so great in amount that he was not compelled to follow them for the benefit of the creditors, why was he releasing any claim or right thereto? What other rights did he have to release? If he made no claim of right to possession of said trucks, how could he turn over "the securities above referred to," to Schanke & Co.? It is apparent from the stipulation itself that the trustee had assumed to exercise or claim the right to possession. It shows very clearly that the trustee thought at least there might be some interest in the property that would be of benefit to the general creditors, and his claims with relation thereto evidently resulted in considerable benefit to the creditors by securing a release of $45,000 of Schanke & Co.'s claim against the bankrupt's estate, $20,000 more at least than the amount Schanke & Co. had received for the trucks.

The trial court was not in error in holding, under this record, that the trustee was in constructive possession of the trucks on and after the date of the adjudication and that the title of the trustee was subject to the lien of respondents for rent.

[9] Nor do we think there was a waiver of the lien by the releasing of the premises to Craven & Dewing, leaving the trucks in said building. It was the duty of the trustee in behalf of the creditors to try and reduce liability under the lease. In response to said duty, and very properly, he arranged for a cancellation of the lease, and respondents then released to Craven & Dewing. The record does not show that respondents had anything to do with, or in fact had any knowledge of Schanke & Co. paying storage to Craven & Dewing. Nor does the record show any act on the part of the respondents with relation thereto that would be sufficient upon which to base a waiver.

[10] There is a broad ground of equity here in favor of respondents' position. This action is in equity, subdivision b, § 24, Bankruptcy Act. Collier on Bankruptcy says:

"A bankruptcy court is a court of equity, seeking to administer the law according to its spirit, and not merely by its letter. Proceedings in bankruptcy generally are in the nature of proceedings in equity, and frequently call for the exercise of full equity powers in the ascertainment and proper enforcement of the equities of the parties; where this is so the court may apply equitable rules and will be governed by equitable principles." In re Siegel-Hillman Dry Goods Co. (D. C.) 111 Fed. 980; In re Kane, 127 Fed. 552, 62 C. C. A. 616; United States v. Allen (D. C.) 150 Fed. 152; Westall et al.

v. Avery, 171 Fed. 626, 96 C. C. A. 428; Ogden v. Gilt Edge Consol. Mines Co., 225 Fed. 723, 140 C. C. A. 597; Nisbet, Commissioner of Safety v. Fed. Title & Trust Co., 229 Fed. 644, 144 C. C. A. 54.

This court said in Atchison, T. & S. F. Ry. Co. et al. v. Hurley, 153 Fed. 503, 508, 82 C. C. A. 453, 458 (affirmed in 213 U. S. 126, 29 Sup. Ct. 466, 53. L. Ed. 729):

"The administration and distribution of the property of bankrupts is a proceeding in equity (In re Rochford, 59 C. C. A. 388, 124 Fed. 182), and should be conducted on broad equitable lines, with a view of recognizing and enforcing the rights of all parties claiming an interest in the estate, whether they be legal or equitable, or both."

See, also, Sieg v. Greene, 225 Fed. 955, 141 C. C. A. 79, Ann. Cas. 1917C, 1006.

Had there been no bankruptcy proceedings, respondents could have enforced their lien for rent within the six months' period. As the adjudication in bankruptcy, considered from the practical standpoint, took from them their remedy, a United States court acting in equity should be slow to deny a remedy comparable to that provided by the state statutes.

It is apparent from the record that a most advantageous settlement for the creditors was made by the trustee with Schanke & Co. by which upon their claim of $65,730.34, they allowed a credit of $45,000, being about $20,000 more than they received for the sale of the trucks; they filing an unsecured claim for the balance of $20,730.34. If the trustee had not made some claim to an interest in the trucks for the benefit of the creditors, it would be difficult to understand on what theory Schanke & Co. were willing to allow this credit. As the trustee was evidently claiming the trucks as an asset of the estate, the claim, as matter of law, must have been subject to existing liens. It is quite apparent that the stipulation was not entered into merely for the purpose of arriving at a valuation of the trucks. If so, why was a credit given to the estate of $20,000 above the amount received from their sale? It would be natural and fair to presume that the trustee in bringing about the settlement with Schanke & Co. used all the mental instrumentalities at hand. The claim to the trucks and the lien of respondents thereon for rent could well be persuasive in stimulating a desire for settlement upon the part of Schanke & Co. Undoubtedly they assisted in bringing about the result. The record does not disclose what per cent. of indebtedness was or could be paid by the bankrupt, and the court is not informed as to that; but if as small an amount as 10 per cent. should be paid upon the debts the credit of $20,000 secured in the adjustment would produce more for the benefit of the creditors than the amount allowed respondents. The adjustment with Schanke & Co. was approved by the bankruptcy court, and was evidently beneficial to the estate. We conclude that the trial court was correct in its conclusion, and that no injustice was done.

The appeal is dimissed and the petition to review is denied.